```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
REBECCA DELOATCH,                           :

                    Plaintiff,              :     OPINION AND ORDER

        -against-                           :
                                                  20 Civ. 6957 (GWG)
ACTING COMMISSIONER OF SOCIAL               :
SECURITY,
                                            :
                    Defendant.
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Rebecca Deloatch brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying plaintiff's claim for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons set forth below, Deloatch's motion is granted, and the Commissioner's cross-motion is denied.

---

[1] See Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 17, 2021 (Docket # 26); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 17, 2021 (Docket # 27) ("Pl. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings, filed Nov. 30, 2021 (Docket # 30); Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings, filed Nov. 30, 2021 (Docket # 31) ("Def. Mem."); Plaintiff's Reply Brief, filed Dec. 14, 2021 (Docket # 32) ("Pl. Reply").

I.      BACKGROUND

    A.  Procedural History

Deloatch applied for both DIB and SSI on September 1, 2016. See SSA Administrative Record, filed Apr. 13, 2021 (Docket # 14) ("R."), at 139, 143. She alleged that her disability began on July 18, 2016, when she was 33 years old. See R. 139. The Social Security Administration ("SSA") denied both applications on November 17, 2016, R. 58-59, and Deloatch sought review by an Administrative Law Judge ("ALJ"), R. 90-94. A hearing was held on January 9, 2019. R. 30. In a written decision dated April 16, 2019, the ALJ found that Deloatch was not disabled. See R. 13, 24-25. On June 23, 2020, the Appeals Council denied Deloatch's request for review of the ALJ's decision. R. 1. This action followed.

    B.  The Hearing Before the ALJ

The hearing was held by video conference before an ALJ in Wichita, Kansas. R. 30. Deloatch and her representative Gabriel J. Hermann appeared from Goshen, New York, while a vocational expert ("VE"), Lynn Smith, appeared via telephone. R. 40.

Deloatch testified that she lives in a condominium with her 17 year old son. R. 37. Deloatch graduated from high school and attended some college. R. 37. Deloatch has not worked since July 2016. R. 38. Deloatch testified that she quit her job in dental hygiene sales in July 2016 on the recommendation of her doctors. R. 38-39. Before that, Deloatch worked as a waitress. See R. 38.

Describing her typical day, Deloatch testified that she spent time reading and doing crossword puzzles. R. 43. Deloatch said that she could perform some household tasks, such as getting dressed and preparing meals, but that she was limited by constant pain. See R. 43-45. Deloatch testified that pain often prevented her from running errands such as shopping for

groceries. R. 42, 46. Deloatch said that her anxiety also sometimes prevented her from shopping for groceries, R. 42, 47, as did a lack of energy, R. 47. Deloatch reported using a cane when outside of her home and said that she was unable to stand for longer than five minutes without leaning on something for support. R. 39-40. Deloatch also described difficulty using her hands and numbness in her fingers, R. 40, noting that she had to be careful when picking up objects as her hands may "decide they don't want to work," R. 45.

Deloatch said she did not suffer side effects from her current medications, but that she suffered some cognitive decline after taking the medication doxycycline for six months to treat Lyme disease. R. 43-44. Deloatch stated that she felt constant pain in "[e]very inch" of her body and rated that pain as a 25 on a scale of 1 to 10. R. 46.

 C. The Medical Evidence

Both Deloatch and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 3-8; Def. Mem. at 3-11. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Apr. 14, 2021 (Docket # 15), ¶ 5, and neither party has done so. Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

 D. The ALJ's Decision

The ALJ denied Deloatch's application in a written decision dated April 16, 2019. See R. 10. At step two, the ALJ found that Deloatch had the following severe impairments: "anxiety disorder, major depressive disorder (MDD), bipolar disorder, posttraumatic stress disorder (PTSD), mild neurocognitive disorder, cervical spine disc herniation and disc bulge with mild

stenosis, mild disc bulge at L5-S1, chronic pain syndrome, left hip bursitis, neuropathy, and fibromyalgia." R. 13. At step three, the ALJ concluded that none of Deloatch's severe impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14. The ALJ considered whether Deloatch's degenerative disc disease met Listing 1.04 (disorders of the spine), but concluded that the record failed to establish compromise of a nerve root or the spinal cord with the additional findings required under that listing. Id. The ALJ then considered whether Deloatch's neuropathy met Listings 1.02 (major dysfunction of a joint), 11.08 (spinal cord disorders), 11.17 (neurodegenerative disorders), or 11.14 (peripheral neuropathy), concluding that Deloatch did not possess the limitations in her ability to ambulate required by the former three listings and that Deloatch did not experience the disorganization of motor function in two extremities required by Listing 11.14. Id.

The ALJ next considered whether the severity of Deloatch's mental impairments met Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma- and stressor-related disorders), but concluded that Deloatch did not satisfy the "paragraph B" criteria, which require a claimant to possess one "extreme" or two "marked" limitations among the four broad areas of mental functioning in order to meet these listings. Id. The ALJ similarly concluded that Deloatch did not satisfy the "paragraph C" criteria. R. 16.

The ALJ then assessed Deloatch's residual functional capacity ("RFC"). The ALJ determined that Deloatch retained the ability to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except that:

> [C]laimant has the residual functional capacity (RFC) to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk in

>combination for a total of two hours in an eight-hour workday, and can sit for about six hours in an eight-hour workday.  The claimant can occasionally climb ramps and stairs, may not climb ladders, ropes and scaffolds, and can occasionally balance, stoop, kneel, crouch and crawl.  The claimant can tolerate occasional exposure to vibration and extreme cold but may not be exposed to hazards such as unprotected heights and machinery with exposed moving mechanical parts.  The claimant can frequently reach overhead with the upper extremities and can frequently handle and finger with the upper extremities.  The claimant requires the use of an assistive device, such as a cane, for ambulation.  The claimant can perform simple, routine and repetitive tasks in a non-production pace workplace that do not involve more than frequent interaction with coworkers, supervisors and the general public.

R. 16.

The ALJ considered Deloatch's descriptions of her own symptoms and impairments and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 17.  The ALJ based this determination, as well as her overall conclusion as to Deloatch's RFC, on an evaluation of the opinions and treatment notes of Drs. Rizqalla, Antiaris, Kaci, and Mass, as well as the opinions of state psychological consultant S. Hennessey and licensed social worker Joseph Hazucha.  See R. 16-19.

At step four, the ALJ concluded that Deloatch was unable to perform her past work as a dental equipment sales representative and appointment clerk.  R. 19.  Relying on the VE's testimony, the ALJ found that someone with Deloatch's RFC could perform several unskilled sedentary occupations, such as "document specialist," "toy stuffer," and "printed circuit board screener."  Id.  The ALJ further relied on the VE's testimony to determine that Deloatch's use of an assistive device, a cane, would not preclude her from working in these positions.  R. 20-21.

Accordingly, the ALJ determined that Deloatch was not disabled under sections 216(i) and 223(d) of the Social Security Act.  R. 21.

II.     GOVERNING STANDARDS OF LAW

   A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). The "threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that

"[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." <u>Johnson</u>, 563 F. Supp. 2d at 454 (punctuation omitted).

    B. <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see id.</u> § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); <u>accord</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); <u>Craig v. Comm'r of Soc. Sec.</u>, 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>see also</u> <u>Burgess</u>, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

    C. Treating Physician Rule

Under the so-called "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating sources" — as defined in the

regulations — when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[1] Treating sources include some professionals other than physicians. See Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008). The Second Circuit has summarized the deference that must be accorded the opinion of a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. First, the ALJ must decide whether the opinion is entitled to controlling weight. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian[, 708 F.3d at 418] (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)) . . . . An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error. Selian, 708 F.3d at 419-20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019). Accordingly, the Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; accord Estrella, 925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

---

[1] Although the SSA has since revised its regulations to eliminate the treating physician rule, the rule applies in this case because the application for benefits was filed before March 27, 2017. See R. 58; Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

Nonetheless, the Commissioner is not required to give deference to a treating physician's opinion where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32. In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Finally, a "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "searching review of the record," elect to affirm the decision if "the substance of the treating physician rule was not traversed," Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

III.    DISCUSSION

Deloatch argues that the ALJ's RFC determination was unsupported by substantial evidence because the ALJ (1) "failed to weigh the opinion of treating physician[] James Gurniak, M.D.," Pl. Mem. at 9-12, and (2) "failed to properly weigh the opinion of treating physician Alain Mass, M.D., which was supported by the record as a whole and which was consistent with the improperly rejected opinion of treating therapist, LCSW, Joseph Hazucha," id. at 12-18. Because we conclude that the first argument requires remand, we do not reach Deloatch's remaining argument.

Although Deloatch styles her first argument as relating to the sufficiency of the evidence supporting the ALJ's RFC determination, Deloatch centers her argument on the ALJ's alleged failure to comply with the so-called "treating physician" rule. The Commissioner does not

contest that Dr. Gurniak was a treating source within the meaning of the regulations. We note that Dr. Gurniak treated Deloatch for two years and that the record contains more than one hundred pages of Dr. Gurniak's treatment records. See R. 640-747.

The ALJ's decision makes no mention of Dr. Gurniak's opinion and thus ipso facto fails to consider the Burgess factors. This failure violated 20 C.F.R. § 404.1527(c)(2)'s requirement that an ALJ "always give good reasons" in a decision for the weight given to a treating physician's opinion. Courts have regularly held that a failure to apply the Burgess factors for assessing a treating physician's opinion requires remand. See Selian, 708 F.3d at 419 (remanding where ALJ had not applied Burgess factors or provided other "good reasons" for rejecting treating physician's opinion); Snell, 177 F.3d at 133 ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."). In light of the complete failure to mention the opinion, we do not find this is a case where we can independently determine that "the substance of the treating physician rule was not traversed." Estrella, 925 F.3d at 96. Indeed, the Commissioner does not supply a single instance where a court has found compliance with the treating physician rule where there is no mention of the treating physician's opinion or treatment notes in the ALJ's decision. See Def. Mem. at 24-26. Rather, courts have found compliance with the treating physician rule where at least some reasons for discounting the opinion have been set forth with clarity in the ALJ's decision, even if the Burgess factors are not expressly and individually considered. See, e.g., Reyes v. Berryhill, 2018 WL 3728933, at *5 (S.D.N.Y. Aug. 6, 2018) (finding compliance with the treating physician rule where "the ALJ sufficiently set forth the reasons why she was not giving Dr. Dassa's opinion controlling weight"). The closest the Commissioner comes to citing such a case is Holler v. Saul, 852 F. App'x 584 (2d Cir. 2021). But in that case, although the ALJ had not

addressed the treating physician's opinion specifically, the ALJ had "reviewed and summarized the treatment notes" from the health care provider that employed both the treating physician who had expressed the opinion at issue and other practitioners. Id. at 586. Here, there was no discussion of Dr. Gurniak's notes.

We reject the Commissioner's invitation to uphold the ALJ's decision because the ALJ properly rejected the opinion of another practitioner, Dr. Mass, who expressed opinions similar to those of Dr. Gurniak. See Def. Mem. at 24. Accepting this invitation would deprive the claimant of the possibility that, had the ALJ considered both opinions, the ALJ might have found that there was greater weight to support the conclusions in those opinions. See 20 C.F.R. § 404.1527(c)(2) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Moreover, the two physicians did not reach identical conclusions as to Deloatch's functional limitations. While Dr. Mass concluded that Deloatch was "Moderately Limited" in "sitting" and "using hands," see R. 616, Dr. Gurniak found that Deloatch was "Very Limited" in sitting and checked both "Moderately Limited" and "Very Limited" for "using hands," R. 724.

Accordingly, this matter is remanded with instructions to determine the proper weight to be given to Dr. Gurniak's opinion and, based on that determination, to re-evaluate the evidence in the case. We do not opine on the claimant's challenge to the ALJ's rejection of Dr. Mass's opinion or the opinion of LCSW Hazucha inasmuch as an assessment of Dr. Gurniak's opinion might affect the ALJ's views of these other opinions.

IV. CONCLUSION

For the foregoing reasons, Deloatch's motion for judgment on the pleadings (Docket # 26) is granted and the Commissioner's cross-motion (Docket # 30) is denied. The matter is remanded to the agency for further proceedings consistent with this opinion.

SO ORDERED.

Dated: New York, New York
January 28, 2022

GABRIEL W. GORENSTEIN
United States Magistrate Judge